SCHOELLKOPF et al. v. COATSWORTH et al.

(Supreme Court, Appellate Division, Fourth Department.  November 20, 1900.)

1. LANDLORD AND TENANT—COVENANTS.
   The successors of a landlord, coming into possession of the demised premises without having parted with any consideration therefor, and with notice of the lease, and having thereafter received the benefits accruing thereunder, are chargeable with the lessor's covenants.

2. SAME—TERMINATING TENANCY—NOTICE.
   Where the successors of a landlord took possession of demised premises under a notice which declared that such possession was taken pursuant to the provisions of the lease, they thereby admitted their liability to perform every obligation resting upon their predecessor in title.

3. SAME—LEASE—CONSTRUCTION.
   A lease for 15 years required the lessees to erect buildings on the premises within three years, and the lessors covenanted that "at the expiration of the term above created, unless they give the notice hereinafter provided for," they would pay the lessee the value of the buildings; the notice referred to being notice of the lessors' intention to take possession of the premises.  It was also agreed that, if the notice was not given at the end of the term, the lease should be renewed for another five years, and so on indefinitely, on the same conditions as "hereinbefore expressed."  *Held*, that the lessors' failure to give the notice at the end of the 15 years did not relieve their successors in interest from liability to pay for the buildings on giving notice thereafter, since the word "unless" should be construed as relating merely to the time when payment of the improvements should be made, and not to exempt the lessors from payment, since the phrase "on conditions hereinbefore expressed" was evidently intended to refer to the agreement to pay for the buildings.
   McLennan, J., dissenting.

Appeal from trial term, Erie county.

Action by Louis Schoellkopf and another against Albert T. Coatsworth and others.  From a judgment in favor of defendants, plaintiffs appeal.  Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles M. Harrington, for appellants.
John Cunneen, for respondents.

ADAMS, P. J.  On the 1st day of April, 1847, Caleb Coatsworth and wife and John Coatsworth and wife, who were then the owners of certain premises situate in the city of Buffalo, "demised, let, and leased" the same to one Thomas J. Dudley, and "to his executors, administrators, and assigns," by a written lease under seal, for the term of 15 years; the rent reserved ranging from $50 per annum for the first year to $700 per annum for the last five years.  Among other conditions contained in this lease was one which required the tenant, within three years after its date, to erect upon the demised premises substantial brick buildings, suitable for commercial purposes; and the lessors covenanted to and with the lessee, "his executors, administrators, and assigns, that at the expiration of the term above created, unless they give the notice hereinafter provided for, for the purpose of renewing and continuing this lease (upon said party of the second part having kept and performed all these cove-

nants and agreements herein contained on his part), they will pay the said party of the second part, his executors, administrators, or assigns, the value of the said buildings that may then be standing upon said demised premises, with the vaults and sidewalks that shall have been constructed on said premises, as the said value thereof shall then be." Then follows a provision for ascertaining the value of such buildings and improvements by a system of appraisal, which in turn was followed by this covenant, viz.:

"And the said parties of the first part further covenant and agree to and with the party of the second part, his executors, administrators, and assigns, that in case they do not give the party of the second part, his executors, administrators, or assigns, at least six months' notice in writing before the first day of April, 1862, of their election to take possession of the said demised premises at the expiration of this lease, and pay for said buildings, vaults, and sidewalks at such appraised value, that then and in that event they will renew and continue this present demise and lease, and such omission to give said notice shall be deemed and taken to be a renewal and continuance of this demise and lease for five years from the said first day of April, 1862, upon the same terms and. conditions hereinbefore expressed, except that the rent for said renewed and continued term shall be seven hundred dollars per annum, payable in the same way as the last five years' rents above provided for. And they also covenant and agree as aforesaid that, so often as they shall fail to give said six months' notice before the termination of such renewed term, they will renew the said demise and lease, and such failure shall be deemed a renewal thereof for five years from the termination thereof, on the same terms and conditions as the said first renewal and continuance. And the party of the second part covenants with the party of the first part that, in case of the renewal and continuance of this lease and demise as aforesaid, he will accept and continue the same on the terms aforesaid, and will pay the said parties of the first part, their executors, administrators, or assigns, the rents hereinbefore mentioned, on such continuance and renewal, of seven hundred dollars per annum for each year of such renewal and continuance, and pay all taxes and assessments assessed as aforesaid during such renewal and continuance, so long as and until such renewals and continuances shall end."

Shortly after the execution of the lease the tenant entered into the occupancy of the demised premises, and in due course of time caused to be erected thereon the buildings contemplated by the pro- vision hereinbefore referred to, together with certain vaults, side- walks, and other incidental improvements, which were of the value of about $30,000. Prior to the expiration of the term mentioned in the lease no notice was given by the lessors of their election to take possession of the leased premises, and the lessee consequently con- tinued to occupy the same. In the meantime, the original lessors having died, the defendants succeeded to their right, title, and inter- est in and to the premises in question; and the plaintiff herein, by virtue of various mesne assignments, transfers, and proceedings, also succeeded to the right, title, and interest of the original lessee, Thomas J. Dudley. After succeeding to the lessors' title the de- fendants received the rents and other benefits accruing under the lease, without attempting to terminate the same, until the 30th day of July, 1896, when they served a written notice upon the plaintiffs herein of their intention "to take possession of the said devised premises, pursuant to the provisions of said lease, on the first day of April, 1897," and shortly thereafter they entered into and still remain in possession of the premises in question; but they deny

their liability to pay for all improvements thereon, and this action is brought to recover the value thereof, and to have the same declared a lien upon the premises. To the complaint, which contained, among other things, the facts above detailed, the defendants interposed a demurrer, which was sustained by the trial court upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and from the interlocutory judgment entered thereon this appeal is brought.

It must be assumed, we think, that the parties to this action stand in precisely the same relation towards each other as did the original parties to the lease; that is, the plaintiffs, as assignees of the lessee, have succeeded to whatever right, title, or interest that instrument conferred upon such lessee, while the defendants, having come into possession of the demised premises without having parted with any consideration therefor, with notice of the lease, and having thereafter received the benefits accruing under the lease, are chargeable with the lessors' covenants, as their successors in title. Greason v. Keteltas, 17 N. Y. 491. Moreover, having taken possession of the demised premises under a notice in which they declare that such possession is taken "pursuant to the provisions of the said lease," they have admitted their liability to perform every obligation which rested upon their predecessors in title. In re Coatsworth, 160 N. Y. 114–121, 54 N. E. 665.

This much being settled, it remains to be determined whether the lessors were, under the circumstances, legally obligated to pay for the buildings and other improvements upon the demised premises; and, to accomplish this, resort must be had and construction given to the language of the lease. By reference to that instrument it will be observed that, immediately following the clause which requires the lessee to cause certain specified buildings to be erected upon the demised premises within a definite period, there is an agreement upon the part of the lessors, their executors, administrators, and assigns, to pay to the lessee, his executors, administrators, and assigns, "at the expiration of the term above created," the full value of such buildings, vaults, and sidewalks as may have been erected or constructed pursuant to the requirement hereinbefore mentioned, "unless they give the notice hereinafter provided for." The "notice" here referred to is a notice of the lessors' intention to take possession of the demised premises, and thus to terminate the lease which they agreed to give, at least six months before the time for its expiration; and they further agreed that in the event of their omission to give such notice the lease should be deemed continued and renewed for the term of five years from April 1, 1862 (the date of the expiration of the original term), "upon the same terms and conditions hereinbefore expressed, except that the rent for said renewed and continued term shall be $700 per annum, payable in the same way as the last five years' rent above provided for"; and the lessors further stipulated "that, so often as they shall fail to give said six months' notice before the termination of such renewed term, they will renew the said demise and lease ＊ ＊ ＊ for five years from the termination thereof on the same terms and conditions as the said first renewal and

continuance." This language, it seems to us, when fairly construed, constituted, to all intents and purposes, a continuing lease; that is, one which, although expressing a definite term, was to continue indefinitely unless the lessors saw fit to terminate it in the manner therein provided; and, as a matter of fact, it did continue for 50 years. The vital question, therefore, which presents itself, is, did such continuance extinguish the agreement of the lessors to pay for the improvements made by the lessee? Obviously the answer to this question must depend upon the construction to be given to the word "unless," as it is used in the clause containing the agreement to continue. We think it quite clear that this word related to the time when the improvements were to be paid for, and expressly limited the words "at the expiration of the term above created," which precede it. As thus construed, obscurity and vagueness disappear, and it becomes perfectly apparent that it was the intent of the parties that, if the lessors availed themselves of their right to terminate the lease at the expiration of the term of 15 years, they were to then pay for the improvements thereon, but otherwise such payment was to be deferred until the lease was actually terminated, whenever that event occurred. It is a familiar rule of construction that the intent of the parties to a contract is to be ascertained, not merely by reading a single word or clause, but, in cases of doubt, by giving effect to the instrument in its entirety. Wood v. Sheehan, 68 N. Y. 365; Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275. And the application of this rule in the present instance will, we think, serve to make it still more clear that all the parties to the lease understood that the obligation to pay for improvements was not extinguished by the continuance of the term; for it will be seen that such continuance was expressly granted "upon the same terms and conditions hereinbefore expressed." This brings us to a consideration of what those terms and conditions were. By reference to the lease it will be discovered that the first one mentioned was that the lessee should pay the rent reserved at the times and in the manner therein specified; but in the continuing clause the parties were careful to state that the rent for any additional term was to be upon a different basis than that "hereinbefore expressed." Consequently they could not have had that in mind. Another condition was that certain buildings should be erected upon the demised premises. Inasmuch, however, as those buildings were to be erected during the first three years of the term, it is quite obvious that they could not again be erected as a condition of continuing the term, and consequently this condition could not have been within the contemplation of the parties. The only remaining conditions, if we except the usual clause giving to the lessors the right of re-entry on nonpayment of rent, relate to the payment of taxes by the lessee and the payment for improvements by the lessors; and these, manifestly, were the ones which the parties had in mind when they stipulated that every extension of the term should be upon the same terms and conditions as those "hereinbefore expressed." Unless such a construction be given to these words, they have little or no force and effect, while, upon the other hand, when thus construed there is given to the entire instrument what, under

all the circumstances, must, we think, be regarded as a reasonable interpretation, and one which satisfies another important rule of construction.

The learned counsel for the respondent cites a number of cases which, as he contends, support, if they do not compel, a different construction from the one which we have indicated our disposition to give; and Carr v. Ellison, 20 Wend. 178, may properly be regarded as a fair type of this class of cases. That was an action of ejectment to recover possession of a house and lot situate in the city of New York. The plaintiff derived title from one Thomas Ellison, who in his lifetime had demised the premises to William Corwin, under whom the defendants claimed. By the terms of the lease, Corwin covenanted that within a specified time he would erect a two-story frame house upon the leased land, and at the expiration of the term would surrender the same to Ellison. It was further agreed that the building thus to be erected should be appraised by indifferent persons, and Ellison covenanted that he would pay Corwin the appraised value thereof, "or he, his heirs or assigns, shall renew the lease ＊ ＊ ＊ for the term of twenty-one years more, ＊ ＊ ＊ and under the same covenants as hereinbefore granted." Corwin and his assigns entered into possession of the premises under the lease, and remained in possession thereof until the expiration of the extended term of 21 years, at which time it was insisted that the plaintiff could not recover possession without paying for the building which had been erected. This contention, however, was not sustained, and the plaintiff was allowed to recover. It is to be observed, however, that the lease in this case, although similar in many respects to the one now under consideration, differed from it in one most essential particular; that is, it contained two alternative covenants, either one of which the lessor was at liberty to avail himself of. In other words, the use of the word "or" instead of "unless" enabled him to either pay for the building at the expiration of the term specified in the lease, or extend such term for a period of 21 years. He chose the latter alternative, or, rather, it should be said that the lessees continued to occupy the premises for the additional term with at least the tacit consent of the lessor, and for that reason it was held that their right to enforce payment for the building was extinguished; the court (Bronson, J.), saying:

"The good sense of the contract seems to be this: The lessee agreed to erect a frame house on the premises, and the lessor stipulated to pay him the value of the building at the end of the term, or to compensate him by a renewal of the lease for the term of twenty-one years more."

It is also to be noted that, in attempting to ascertain the intention of the parties in the case cited, much stress is laid upon the fact that the building erected was a frame one, which would be of comparatively little value after the lapse of a second period of 21 years. In the present case, however, the buildings were constructed of brick, and, so far as appears, were quite as valuable as when first erected; and it is hardly reasonable to suppose, in view of the language of the lease and of all the circumstances of the case, that the lessors could have expected the lessees to pay a large ground rent for the de-

mised premises, and then, at the expiration of the extended term, which it was in the power of the lessors to limit to five years, yield up improvements costing $30,000 without receiving any allowance therefor. It is said by the counsel for the respondent that the locality in which the demised premises are situate is no longer a desirable one for business purposes. It is perhaps sufficient to suggest that no such fact as yet appears in the case. If it did, it might furnish a reason why the plaintiffs would not wish to perform all the covenants of the lease, but it would not aid very greatly in their construction, inasmuch as the present situation probably could not have been anticipated by the parties at the time the lease was executed. As a result of the views to which expression has been given, we conclude that the defendants' demurrer should have been overruled.

Interlocutory judgment reversed, with costs, and demurrer overruled, with costs, with leave to the defendants to withdraw their demurrer and answer upon payment of the costs of such demurrer and of this appeal. All concur, except McLENNAN, J., who dissents.

McLENNAN, J. I dissent from the conclusion reached in the prevailing opinion, upon the ground that the contract of lease is not ambiguous, is not unreasonable or unconscionable, and, so far as appears, directly expresses the intention of the parties at the time it was made; that, by its express terms, the then owners not having given notice of their election to enter into possession on the 1st day of April, 1862, and not having so entered, they and their successors, the defendants, are relieved from all obligation to pay for the building erected by the tenant; and that therefore the plaintiff is not entitled to recover.